IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| TRUSTEES OF THE CHICAGO REGIONAL COUNCIL OF CARPENTERS WELFARE FUND, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| DONNA LECK, BARRY SILVER, Esq., and BARRY S. SILVER, P.C., | ) ) ) ) ) |
| Defendants. | ) |

## COMPLAINT

Plaintiffs, TRUSTEES OF THE CHICAGO REGIONAL COUNCIL OF CARPENTERS WELFARE FUND ("Welfare Fund") by and through the law firm of MCGANN, KETTERMAN & RIOUX, LTD., complain of the Defendants, DONNA LECK, BARRY SILVER, Esq., and BARRY S. SILVER, P.C., and state as follows:

### NATURE OF THE CASE

1. This is an equitable action to enforce the terms of the CHICAGO REGIONAL COUNCIL OF CARPENTERS WELFARE FUND, (the "Welfare Fund") plan of benefits, including an equitable lien by agreement, and for other equitable relief pursuant to the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001, *et seq*.

### JURISDICTION & VENUE

2. This Court has jurisdiction over this action pursuant to ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1) and ERISA § 502(f), 29 U.S.C. § 1132(f) because the Plaintiffs seek equitable relief under Title I of ERISA. Further, this Court has jurisdiction over this action under 28 U.S.C. § 1331 because this action arises under federal law.

1

3. Venue is proper in the Northern District of Illinois pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the Welfare Fund's administrative offices are located in the Northern District of Illinois.

## PARTIES

4. The Welfare Fund is an employee welfare benefit plan within the meaning of ERISA § 3(1), 29 U.S.C. § 1002(1), and a multiemployer plan within the meaning of ERISA § 3(37), 29 U.S.C. § 1002(37). It is a nonprofit tax-exempt organization administered by a joint Board of Trustees made up of an equal number of union and employer appointed trustees pursuant to the Taft-Harley Act § 302(c)(5), 29 U.S.C. § 186(c)(5).

5. Plaintiffs are trustees and fiduciaries of the Welfare Fund, and, as such, are entitled to bring this action pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).

6. Defendant DONNA LECK ("LECK") is an individual that resides in Libertyville, Illinois. At all times relevant to this action, Defendant LECK has been a participant of the Welfare Fund within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7) and has been a Covered Individual under the terms of the Welfare Fund Plan Document in effect during the relevant time period.

7. Defendant BARRY S. SILVER, P.C., is an Illinois corporation and law firm with offices located at 302 Saunders Rd. Suite 200, Riverwoods, IL 60015. Defendant BARRY SILVER, Esq., is a licensed attorney and principal of BARRY S. SILVER, P.C. These defendants shall be hereinafter collectively referred to as "SILVER."

8. At all times relevant to this action, Defendant SILVER and/or agents and employees of these defendants, have represented LECK in a claim for personal injuries sustained on or about February 19, 2018.

9. By virtue of their representation of LECK, and their benefit obtained by the Welfare Fund's advancement of un-covered medical expenses related to the injuries, the SILVER defendants are also participants of the Welfare Fund within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7) and are Covered Individuals under the terms of the Welfare Fund Plan Document in effect during the relevant time period.

## RELEVANT PLAN PROVISIONS

10. Any health or welfare coverage extended by the Welfare Fund to participants is subjects to the terms and conditions stated in the Plan Document. (**EXHIBIT 1 – Plan Document**).

11. Section 14.01 of the Plan Document establishes the terms and conditions of the Welfare Fund's rights to subrogation and reimbursement with respect to benefits paid on behalf of participants.

12. Section 14.01(A) of the Plan Document states:

> The Fund provides no benefits for Claims of a Covered Individual that are related to any Illness or Injury which is caused by third parties or which is Work-Related or the responsibility of any other entity. The Fund will deny any Claim for an Illness or Injury which is caused by third parties, which is Work-Related or the responsibility of any other entity except as otherwise provided in this section.

13. Section 14.01(B) of the Plan Document states in relevant part:

> If the Fund chooses to advance benefits for the Injuries and Illnesses cause by third parties or that are Work-Related or the responsibility of any other entity, a Covered Individual:
>
> (1) Upon final adjudication, settlement and/or receipt of case proceeds, agrees to reimburse the Fund up to (i) the amount of benefits paid by this Fund or amounts that the Fund is obligated to pay… from any recovery received from any third party, insurer or any other source…
>
> (3) Agrees to enter into a subrogation and reimbursement agreement that is given to the Covered Individual by the Fund, which Agreement the

    Fund may require before a Covered Individual can receive any advancement of benefits….A Covered Individual must comply with all the terms of the subrogation and reimbursement agreement, including the establishment of a trust for the benefit of the Fund. In this regard, the Covered Individual agrees that out of any recovery he receives from any Source or Coverage…the identified amount that the Fund has Advanced or is obligated to Advance in benefits will be immediately deposited into a trust for the Fund's benefit and the Fund shall have an equitable lien by agreement in the amount set forth in this paragraph which shall be enforceable as part of an action to enforce the Plan terms under ERISA Section 503(a)(3), including injunctive actions to ensure that these amounts are preserved and not disbursed;

    (4) The Fund's equitable lien by agreement imposes a constructive trust upon the assets received as a result of the recovery by the Covered Individual…

    (5) The Agreement will grant the Fund a priority, first dollar security interest and a lien in any recovery received from any Source or from any Coverage, whether by suit, settlement or otherwise…

    (6) Acknowledges that the Fund specifically disavows the common fund doctrine, attorneys fund doctrine, fund doctrine, the double-recovery rule or any similar doctrine or theory, including the contractual defense of unjust enrichment. This means that the Fund's subrogation and reimbursement rights apply on a priority, first dollar basis to any recovery by the Covered Individual from any Source or Coverage without regard to legal fees and expenses of the Covered Individual. This also means the Covered Individual will be solely responsible for paying all legal fees and expenses in connection with any recovery from any Source or Coverage for the underlying Illness or Injury, and the Fund's recovery shall not be reduced by such legal fees or expenses;

    (9) Agrees that the Fund's right to reimbursement applies regardless of the existence of any state law or common law rule that would ban recovery from a person or entity that caused the Illness or Injury, or from the insurer of that person or entity (sometimes referred to as the "collateral source" rule);

    (10) Agrees not to do anything that will waive, compromise, diminish, release or otherwise prejudice the Fund's reimbursement rights or subrogation rights;

14.     Section 14.01(C) of the Plan Document states in relevant part:

For purposes of this Plan Section 14.01, the term "Covered Individual"

shall also include representatives, guardians, trustees, estate representatives, heirs, executors, administrators of special needs trusts and any other agents, persons or entities that may receive a benefit on behalf of or for Covered Individuals.

## FACTS COMMON TO ALL COUNTS

15. On February 19, 2018, LECK was injured in a motor-vehicle accident. ("Injury").

16. Beginning on or around February 19, 2018, the SILVER defendants and agents/employees of theirs represented LECK in a claim seeking damages for personal injuries arising out of the Injury. ("Injury Claim").

17. Pursuant to Section 14.01 of the Plan Document, LECK executed the Trust and Subrogation/Reimbursement Agreement For Third Party Causation ("Reimbursement Agreement") with the Welfare Fund to compel the Welfare Fund to advance uncovered benefits for medical expenses incurred as a result of the Injury. (**EXHIBIT 2 – Reimbursement Agreement**).

18. During the period of February 19, 2018 through on or about March 5, 2019, LECK received medical treatment to treat conditions they suffered as a result of the Injury.

19. Because LECK was a Covered Individual pursuant to the Plan Document, and because LECK signed a Reimbursement Agreement, the Welfare Fund advanced these medical expenses in the amount of $11,161.33. These benefits took the form of payments made from the Welfare Fund's assets.

20. Defendant LECK, by and through Defendant SILVER, pursued a claim against parties believed to be responsible for the Injury.

21. Defendants recently obtained a settlement in the Injury Claim in an undisclosed amount equal to or in excess of $11,161.33.

22. Upon information and belief, Defendants SILVER and LECK may disburse the

proceeds of the recovery from the Injury Claim in violation of the terms of the Plan Document.

23. Defendants LECK and SILVER have not fully reimbursed and actively seek not to fully reimburse the Welfare Fund from the proceeds of their recovery from the Injury Claim. The Welfare Fund has therefore been damaged in an amount not less than $11,161.33.

24. Upon information and belief, the proceeds of a recovery from the Injury Claim are in possession or control of Defendant SILVER and/or SILVER's client trust account.

25. SILVER is required by the Illinois Rules of Professional Conduct to safeguard the property of third parties. Rule 1.15(d) of the Illinois Rules of Professional conduct states:

> Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

26. Further, Rule 1.15(e) of the Illinois Rules of Professional Conduct states:

> When in the course of representation a lawyer is in possession of property in which two or more persons (one of whom may be the lawyer) claim interests, the property shall be kept separate by the lawyer until the dispute is resolved. The lawyer shall promptly distribute all portions of the property as to which the interests are not in dispute.

## COUNT I – EQUITABLE LIEN & CONSTRUCTIVE TRUST

27. Plaintiffs hereby reallege and incorporate each and every allegation made in paragraphs 1 through 26 of this Complaint as though fully set forth herein.

28. Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), the Plaintiffs bring Count I to obtain appropriate equitable relief against the Defendants.

29. One or more of the Defendants is in possession of a specifically identifiable fund

of $11,161.33, in the amount of the Welfare Fund's subrogation lien asserted on the settlement fund.

30. Under section 14.01 of the Plan, the Welfare Fund has established an equitable lien in the identifiable amount of $11,161.33 against SILVER (to the extent that settlement funds subject to the lien are maintained in their client trust account or in an escrow account, or have been distributed to them as an attorney's fee) and/or LECK (to the extent that settlement funds subject to the lien have been disbursed to them from SILVER or are being held for their benefit in a client trust account or escrow account).

31. The settlement fund held by one or more of the Defendants, and upon which the Welfare Fund is entitled to an equitable lien in the amount of $11,161.33, is to be held in constructive trust to the extent of the Welfare Fund's lien by Defendants for the Welfare Fund.

32. Based upon the equitable lien and the constructive trust, the Defendants stand in a fiduciary relationship to the Welfare Fund with respect to the $11,161.33 value of such lien and trust, and the Defendants may not dispose of assets subject to that lien or violate fiduciary duties relating to those assets.

**WHEREFORE,** the Plaintiffs request the following relief:

a) Equitable remedies against the Defendants and in favor of the Plaintiffs, pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), in the form of:
   i. Imposition of an equitable lien and a constructive trust upon the settlement funds held by the Defendants, as identified in this Complaint;
   ii. Enforcement of the Plaintiffs' equitable lien in the identifiable amount of $11,161.33 (plus interest) against assets of the settlement fund belonging to the Plaintiffs and held by the Defendants, as identified in this Complaint;
   iii. Enjoinment of the Defendants from disposing of any funds held in constructive trust for the Plaintiffs, until such time as the Plaintiffs' equitable lien has been satisfied in full;

b) That this Court retain jurisdiction to enforce the equitable remedies sought by the Plaintiffs in this Complaint, until such time as the Plaintiffs' equitable lien has been satisfied in full;

c) An award of attorneys' fees and costs pursuant to ERISA § 502(g)(1), 29 U.S.C. § 1132(g)(1); and

d) Such further or different relief as this Court may deem proper and just.

### COUNT II – BREACH OF PLAN (Subrogation Lien & Constructive Trust)

33. Plaintiffs hereby reallege and incorporate each and every allegation made in paragraphs 1 through 32 of this Complaint as though fully set forth herein.

34. Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), the Plaintiffs bring Count II to enforce the terms of the Plan.

35. The Plan grants the Welfare Fund reimbursement and subrogation rights, and requires the repayment by any responsible party (including the Defendants) of medical expenses paid by the Welfare Fund on behalf of a Covered Individual.

36. Thus, under the terms of the Plan, the Welfare Fund is entitled to reimbursement from the Defendants in the amount of $11,161.33, representing funds paid by the Welfare Fund on behalf of LECK for medical expenses incurred as a result of the Injury, before any settlement proceeds, including attorneys' fees, are paid to the Defendants.

37. To date, the Defendants have failed to pay any reimbursement to the Welfare Fund from the settlement proceeds, and the full amount of the Welfare Fund's subrogation lien (i.e., $11,161.33) is unreimbursed.

**WHEREFORE,** the Plaintiffs request the following relief:

a) Equitable remedies against the Defendants and in favor of the Plaintiffs, pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), in the form of:
    i. An order enforcing the Plan and enjoining the Defendants from violating the

      Plaintiffs' subrogation rights as established by the Plan, including an order requiring reimbursement in the amount of the Plaintiffs' subrogation lien of $11,161.33 (plus interest);

  ii. Enjoinment of the Defendants from disposing of any settlement funds in the identifiable amount of $11,161.33 against assets of settlement fund held by the Defendants as described in this Complaint, until such time as the Plaintiffs' subrogation rights as established by the Plan have been satisfied in full;

  iii. Imposition of an equitable lien and a constructive trust upon the settlement funds held by the Defendants, as identified in this Complaint;

b) That this Court retain jurisdiction to enforce the equitable remedies sought by the Plaintiffs in this Complaint, until such time as the Plaintiffs' subrogation rights, as established by the Plan, have been satisfied in full;

c) An award of attorneys' fees and costs pursuant to ERISA § 502(g)(1), 29 U.S.C. § 1132(g)(1); and

d) Such further or different relief as this Court may deem proper and just.

 

Respectfully Submitted,
TRUSTEES OF THE CHICAGO REGIONAL
COUNCIL OF CARPENTERS WELFARE FUND

By: /s/ Daniel E. Quist
One of Plaintiffs' Attorneys

Daniel E. Quist (ARDC #6313773)
McGann, Ketterman & Rioux, Ltd.
111 E. Wacker Dr., Suite 2600
Chicago, IL 60601

Date: December 10, 2019     (312) 251-9700; dquist@mkrlaborlaw.com